**McDOWELL WELDING & PIPEFITTING, INC.,**
**Plaintiff,**

**v.**

**UNITED STATES GYPSUM COMPA-NY; Port of St. Helens; and BE & K Construction Co., Inc., Defendants.**

**Civ. No. 01–1140–BR.**

United States District Court,
D. Oregon.

Jan. 28, 2002.

Bruce H. Cahn, James T. McDermott, Ball Janik, LLP, Portland, OR, for Plaintiffs.

Daniel K. Reising, Timothy Calderbank, Stoel Rives, LLP, Portland, OR, for Defendant BE & K Construction Co., Inc.

## OPINION AND ORDER

BROWN, District Judge.

This matter comes before the Court on the following motions: Motion to Stay Proceedings or, in the Alternative, Transfer (# 3) by Defendant BE & K Construction Co., Inc.; Motion to Dismiss and Motion to Strike (# 5) by Defendant BE & K; Motion to Remand (# 11) by Plaintiff McDowell Welding and Pipefitting, Inc.; Objection to the Declaration of Paul Ritch (# 17) by Plaintiff McDowell; and Objections to the Declaration of Bruce Cahn in Support of Opposition to Motion to Stay Proceedings filed as part of Defendant BE & K's Reply in Support of Motion to Stay or Transfer (# 19).

For the reasons that follow, McDowell's Objection to the Ritch Declaration (# 17) is **OVERRULED**. BE & K's Objections to the Cahn Affidavit (# 19) are **SUSTAINED**, and the Court **STRIKES** the exhibits to the Cahn Affidavit. McDowell's Motion to Remand (# 11) is **DENIED** to the extent it is based on the grounds that this Court lacks jurisdiction over the matter and that the Court should abstain from hearing this matter pursuant to 28 U.S.C. § 1334. In addition, pursuant to LR 2100.1, the Court *sua sponte* **REFERS** this matter to the United States Bankruptcy Court for the District of Oregon subject to any later recommendation by the Bankruptcy Court to withdraw the reference pursuant to LR 2100.4. The reference includes the following pending motions: BE & K's Motion to Stay Pro-

ceedings, or in the Alternative, Transfer (# 3); BE & K's Motion to Dismiss and Motion to Strike (# 5); and McDowell's Motion to Remand (# 11) to the extent it is based on equitable principles.

## PROCEDURAL BACKGROUND

McDowell filed this action in Columbia County on May 11, 2001. McDowell alleged three claims for relief at that time: an action for construction lien foreclosure against Defendants United States Gypsum (USG), the Port of St. Helens (Port), and the since-dismissed EC Company; a breach of contract claim against BE & K; and a *quantum meruit* claim against BE & K and USG.

On June 25, 2001, USG filed a voluntary bankruptcy petition pursuant to Title 11 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware. On July 16, 2001, McDowell filed an Amended Complaint in the Columbia County action in which it voluntarily dismissed EC Company and acknowledged the automatic stay provided by the Bankruptcy Code prohibited it from pursuing its claims against USG. McDowell, however, asserted several new theories of recovery against BE & K as well as additional facts pertaining to its claims against all Defendants. In particular, McDowell asserted claims against BE & K for breach of contract, account, tortious breach of covenant of good faith and fair dealing, fraud, intentional misrepresentation, and intentional interference with contract.

BE & K removed this action to federal court on the bases of diversity jurisdiction pursuant to 28 U.S.C. § 1441 and jurisdiction over a claim arising under Title 11, or arising in or related to a Title 11 proceeding pursuant to 28 U.S.C. § 1452. BE &

K then immediately moved to stay this action or, in the alternative, to transfer the action to the Bankruptcy Court for the District of Delaware. BE & K also filed a Motion to Dismiss McDowell's claims or, in the alternative, to strike portions of those claims.

McDowell opposed any extension of the bankruptcy automatic stay in this matter and moved this Court for an order remanding the case to state court on the bases of lack of jurisdiction, abstention pursuant to 28 U.S.C. § 1334(c), or equitable remand pursuant to 28 U.S.C. § 1452(b).

The Court heard oral argument on December 20, 2001, and took all of the Motions under advisement at that time.[1]

## FACTUAL BACKGROUND

USG, a Delaware corporation, owns a piece of property on the shores of the Columbia River in St. Helens, Oregon. Several years ago, USG decided to make certain improvements to its St. Helens plant. In order to facilitate that construction project, the Port, an Oregon municipal corporation, entered into several agreements with USG. USG transferred title to three utility corridors within its property lines to the Port to allow the Port to make certain site improvements as a public project on publicly-owned land. In turn, the Port provided funds to USG pursuant to several Site Improvement and Dock Improvement Loans. The deed to the three utility corridors specifically provided the Port's title and interest would "automatically revert to, and vest in" USG after the Port completed the improvements and USG repaid the loans.

---

1. Neither the Port nor USG entered an appearance in this matter and, therefore, did not participate at oral argument.

USG hired BE & K, an Alabama corporation, to act as its General Contractor on the construction project. The general contract was a "cost-plus-a-fixed-fee contract with a shared risk-reward incentive plan basis." Under the terms of the contract, USG was obligated to reimburse BE & K for all reasonable and necessary items incurred during the construction, including all "costs incurred in connection with any labor or commercial matter, claim, or dispute with others arising out of or relating to the performance of the work." A separate provision of the contract, however, provided BE & K would indemnify USG for all liens on the property "arising out of Work to be performed and material to be furnished by or through" BE & K as the General Contractor.

BE & K, acting as USG's General Contractor, issued bid packages and requested bids from local subcontractors for various projects. McDowell, an Oregon construction firm, submitted bids for two of these projects: the installation of auxiliary equipment and the installation of piping and instrumentation. McDowell's original bids were substantially less than the next lowest bids. BE & K suggested McDowell re-examine its bids, and McDowell subsequently adjusted the bids upward slightly. After the adjustment, McDowell's bids were still the lowest presented, and BE & K awarded the subcontracts to McDowell.

The subcontracts were signed by representatives of McDowell and BE & K; however, the subcontracts contained the following language regarding payment to McDowell:

> Owner agrees to pay Subcontractor for performance of the Work the lump sum, fixed price.... The Subcontract Price shall be payable as performance progresses upon estimates submitted to and approved and paid by Owner to Contractor.

The subcontracts did not define the term "Owner." No representative of USG signed the subcontracts, and USG was not named or listed as a party. McDowell concedes, however, BE & K entered into the subcontracts as an agent for USG, the subcontract agreements inured to the benefit of USG, and USG was the intended beneficiary of the subcontracts.

McDowell's bids on these jobs were based in part on McDowell's status as a nonunion shop. Soon after the project began, a local group of the pipefitters' union established picket lines at USG's St. Helens plant to protest McDowell's nonunion status. A number of electricians working on other portions of the construction project honored the pipefitters' picket line and refused to perform their jobs. McDowell was asked to enter into a contract with the local plumbing and pipefitting union as a result of the picket. McDowell alleges this request came from both BE & K and USG, while BE & K asserts only USG made the request.

McDowell agreed to sign a union contract, and McDowell's subcontracts were modified as a result. The modifications provided McDowell would furnish BE & K with actual costs and information, including "actual payroll burden increase," after the completion of the subcontracts. The modifications also provided "[n]egotiation of actual cost will be considered for overhead and profit." The subcontract modifications did not refer to USG or the "Owner" of the property and were signed by representatives of McDowell and BE & K only.

During the late summer and fall of 2000, McDowell installed auxiliary equipment provided by BE & K and USG and furnished and installed piping and instrumentation into USG's St. Helens plant pursuant to its subcontracts and the modifications to those agreements. McDowell

provided BE & K with regular invoices for the work performed. McDowell contends BE & K habitually failed to pay in full McDowell's invoices throughout this period. McDowell further asserts representatives of BE & K and USG repeatedly assured McDowell any unpaid amounts would be reimbursed at the conclusion of the project. McDowell alleges, however, those reimbursements were never made.

### MCDOWELL'S CLAIMS FOR RELIEF

In its Amended Complaint, McDowell asserts six state common law claims for relief against BE & K. McDowell first alleges the modifications to its subcontracts, in conjunction with the promises of USG and BE & K to make McDowell whole when the project was completed, converted the original subcontracts from lump-sum, fixed-fee contracts to contracts for payment of actual costs plus overhead and profit. McDowell alleges BE & K and USG owe McDowell approximately $1,000,000 in direct costs plus overhead and profits. McDowell also seeks to recover for the loss it suffered as a result of its extremely low bid on the basis that both USG and BE & K allegedly presented unclear and incomplete bid packages and knew the packages were deficient.

McDowell further asserts BE & K owes it an accelerated completion bonus that remains unpaid. In addition, McDowell seeks to recover from BE & K damages for intentional interference with McDowell's sub-subcontractors and suppliers due to BE & K's improper withholding of payments to McDowell.

McDowell asserts two claims for relief against USG: a construction lien foreclosure action and a claim for unjust enrichment. McDowell also names the Port as a Defendant in its construction lien foreclosure claim.

### OBJECTIONS AND MOTIONS TO STRIKE

■ Before taking action on any motion, the Court must confirm it has jurisdiction over the proceedings. Accordingly, the Court first will consider McDowell's Motion to Remand this matter to state court on the basis of lack of jurisdiction.

When determining whether removal to federal court on the grounds of fraudulent joinder was proper, the Court may consider factual evidence in addition to the bare allegations in the Amended Complaint. *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir. 1987). During oral argument on December 20, 2001, both parties referred to factual evidence concerning the jurisdictional issues in addition to the allegations in the Amended Complaint. The Cahn Affidavit and the Ritch Declaration offered by McDowell and BE & K respectively in connection with BE & K's Motion to Stay these proceedings also contain facts allegedly relevant to jurisdictional issues. The Court, therefore, first will address the parties' objections to those pleadings.

### I. McDowell's Objection to and Motion To Strike Ritch Declaration

■ McDowell objects to the Declaration of Paul Ritch offered by BE & K in support of its Motion to Stay these proceedings. The Court construes McDowell's Objection as a Motion to Strike the Ritch Declaration.

■ McDowell objects to Ritch's statements pertaining to the language in the USG contract and the various McDowell subcontracts because those statements constitute legal conclusions and impermissible opinion testimony. Generally, a lay witness may give an opinion only if it is rationally based on the perception of the

witness, helpful in the determination of a fact at issue, and not based on specialized knowledge. Fed.R.Evid. 701. Under this test, the Court finds McDowell's interpretation of Ritch's Declaration is too rigid. Although the Court does not accept Ritch's statements regarding the proper interpretation of the contracts as the true meaning of the contracts or as correct legal conclusions, the Court treats his testimony as BE & K's interpretation of the contracts.

McDowell also objects to Ritch's Declaration based on his lack of personal knowledge of the facts. In particular, McDowell argues Ritch does not know whether BE & K and USG made certain promises to McDowell because Ritch was not present at all of the discussions between McDowell employees and representatives of USG and BE & K. A witness may not testify to a matter unless the witness has personal knowledge of that matter. Fed.R.Evid. 602. Although the Court does not assume Ritch can speak for all persons at BE & K or USG, Ritch was the project manager for BE & K on this particular project and presumably was in a position to know the parties' promises and obligations to one another. The Court, therefore, construes Ritch's statements as limited to that sphere of knowledge about which Ritch personally was aware and accepts, for purposes of this analysis, Ritch's statement that he was unaware of any additional promises by USG or BE & K to McDowell.

The Court, therefore, overrules McDowell's Objection and denies its Motion to Strike the Ritch Declaration subject to the above limitations.

## II. BE & K's Objections to and Motion to Strike Exhibits to Cahn Affidavit

■ BE & K objects to the Affidavit of Bruce Cahn offered in support of Plaintiff's Response to Defendant BE & K's Motion to Stay on the ground that the exhibits attached to Cahn's Affidavit are inadmissible hearsay evidence. Cahn attached to his Affidavit numerous pages from USG's website regarding its Chapter 11 filing as well as a *Wall Street Journal* article on the subject. The Court construes BE & K's Objections as a Motion to Strike the Exhibits.

Fed.R.Evid. 802 generally prohibits hearsay evidence. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Hearsay contained within hearsay is not excluded under the hearsay prohibition as long as each layer of the hearsay fits into an exception to the general hearsay rule. Fed.R.Evid. 805.

McDowell offers the downloaded documents and the newspaper article for the truth of the matter asserted: namely, USG is a financially sound company despite its bankruptcy filing. The exhibits are classic examples of unauthenticated hearsay documents. *See, e.g., Larez v. City of Los Angeles*, 946 F.2d 630, 642 (9th Cir.1991) (newspaper articles and similar transcriptions of statements are generally inadmissible double hearsay). The Court, therefore, sustains BE & K's Objections to the Cahn Affidavit and strikes the attachments. Even though the Court is not considering those attachments, the Court notes their content would not affect the Court's analysis that follows.

### MCDOWELL'S MOTION TO REMAND

■ BE & K removed this action on the grounds of diversity of citizenship and federal jurisdiction over a proceeding "arising under title 11, or arising in or related to" a bankruptcy case. A motion to remand is the proper procedure for challenging removal. *See Northern California Dist. Council of Laborers v. Pitts-*

*burg–Des Moines Steel Co.*, 69 F.3d 1034, 1038 (1995). The removal statute is strictly construed, and any doubt about the right of removal is resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992) (citations omitted). The presumption against removal jurisdiction means "the defendant always has the burden of establishing that removal is proper." *Id.* (citations omitted).

## I. Diversity of Citizenship

BE & K argues the Port, the only Oregon Defendant, is a sham defendant. BE & K contends, therefore, complete diversity of citizenship exists, and the Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). In the alternative, BE & K asserts McDowell's claim against the Port is stayed[2] pursuant to the automatic stay of 11 U.S.C. § 362, and the automatic stay is tantamount to a *de facto* severance of that claim. BE & K argues, therefore, McDowell's state law claims against BE & K, which would be McDowell's only remaining claims, properly were removed to this Court on the basis of complete diversity of citizenship.

### A. Fraudulent Joinder

#### 1. Standards

An action filed in state court may be removed to federal court if the federal court would have had original subject matter jurisdiction over the action. 28 U.S.C. § 1441(a). 28 U.S.C. § 1332(a) authorizes district courts to exercise original jurisdiction over civil actions in which the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and the parties are citizens of different states. For removal to be valid based on diversity jurisdiction, 28 U.S.C. § 1332(a) "requires complete diversity of citizenship." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir.2001). One exception to the requirement of complete diversity, however, is when a nondiverse defendant has been fraudulently joined for the purpose of defeating diversity jurisdiction. *McCabe*, 811 F.2d at 1339.

A district court may disregard a nondiverse party named in the state court complaint and retain jurisdiction if joinder of the nondiverse party is a sham or fraudulent. *Plute v. Roadway Package System, Inc.*, 141 F.Supp.2d 1005, 1008 (N.D.Cal. 2001) (citation omitted). Fraudulent joinder is a term of art and is not intended to impugn the integrity of the plaintiff or its counsel and does not refer to an intent to deceive. *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D.Cal.1979), *aff'd*, 710 F.2d 549 (9th Cir.1983).

> Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.

*Morris*, 236 F.3d at 1067 (internal quotations and citations omitted).

A defendant seeking removal to federal court "is entitled to present the facts showing the joinder to be fraudulent." *McCabe*, 811 F.2d at 1339 (citation

---

**2.** In response to McDowell's Motion to Remand, BE & K argues the bankruptcy automatic stay extends to McDowell's claims against the Port. BE & K also filed a separate Motion to Stay Proceedings or, in the Alternative, Transfer this matter in its entirety, including McDowell's claims against BE & K, to the Bankruptcy Court for the District of Delaware. In that Motion, BE & K contends the bankruptcy automatic stay extends to McDowell's claims against BE & K because USG is the real defendant-in-interest in those claims and BE & K's liability to McDowell, if any, is derived from USG's liability.

omitted). *See also Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir.), *cert. denied*, 525 U.S. 963, 119 S.Ct. 407, 142 L.Ed.2d 330 (1998). To resolve fraudulent joinder claims, the Court may look beyond the pleadings and consider evidence similar to that offered in summary judgment proceedings, such as affidavits and deposition testimony. *Morris*, 236 F.3d at 1067 (citation omitted).

 A district court resolves all questions of disputed fact and controlling law against the party seeking removal. *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir.1995) (citations omitted). Removal to federal court will be sustained, however, if the removing party demonstrates there is no possibility the plaintiff can state a cause of action against the nondiverse defendant. *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992). *See also Ritchey*, 139 F.3d at 1318 ("[A] defendant must have the opportunity to show that the individuals joined in the action cannot be liable on any theory.").

### 2. Discussion

 Or.Rev.Stat. § 87.010(1) provides any person who performs labor in the construction of an improvement shall have a lien upon the improvement for the labor furnished at the request of the owner or the owner's construction agent. The lien created in § 87.010(1) extends to "the site together with the land that may be required for the convenient use and occupation of the improvement constructed on the site." Or.Rev.Stat. § 87.015(1). Partial ownership interests in the site and land are subject to the lien; however, "[i]f the [owner of the site and land] owned less than a fee-simple estate in the site and land, then only the interest of the person therein shall be subject to the lien." *Id.*

In an action to enforce a lien created by Or.Rev.Stat. § 87.010,

all persons personally liable, and all lienholders whose claims have been filed for record pursuant to ORS 87.035, shall, and all other persons interested in the matter in controversy, or in the property sought to be charged with the lien, may be made parties; but persons not made parties are not bound by the proceedings.

Or.Rev.Stat. § 87.060(7).

McDowell initiated a foreclosure action against USG's St. Helens property, including USG's automatic reversionary interest in the three utility corridors currently possessed by the Port. McDowell acknowledges it cannot enforce a lien on the Port's interest in the property but claims it properly named the Port as an "interested" person with regard to the three utility corridors pursuant to Or.Rev.Stat. § 87.060(7).

BE & K, in contrast, contends the Port is not properly joined in this action because McDowell cannot obtain any relief from the Port. McDowell argues the relief it seeks is a Court order that binds the Port to recognize McDowell's priority over USG's otherwise automatic reversionary interest; i.e., McDowell essentially seeks to prohibit the Port from returning the property to USG in contravention of McDowell's lien.

The Court agrees the Port may be made a party to the lien foreclosure action because it has an interest in some of the property that Plaintiff seeks to foreclose. Under Oregon law, if parties like the Port were not joined as interested parties to lien foreclosure actions, they could not be bound by those proceedings. Whether the Port actually will be bound by these foreclosure proceedings is an open question under Oregon law. The parties have cited no authority regarding the relief available under Or.Rev.Stat. § 87.010 against "inter-

ested" parties who are not also "necessary" parties, and the Court finds no guidance on this issue.

Although it is unclear whether McDowell may obtain the priority it seeks during a lien foreclosure action, the Court on a motion to remand must resolve all questions of controlling law against BE & K as the party seeking removal. The Court, therefore, finds the Port is not a sham defendant because it is not obvious under Oregon law that Plaintiff has failed to state a claim against the Port.

### B. Severance of Plaintiff's Lien Foreclosure Claim

#### 1. Standards

Fed.R.Civ.P. 21 provides, in part:

Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

■ The court may exercise its broad discretion to sever discrete and separate claims pursuant to Rule 21. *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir.), *cert. denied*, 531 U.S. 1012, 121 S.Ct. 567, 148 L.Ed.2d 486 (2000). The district court, however, abuses its discretion if the severance separates an otherwise "essentially unitary problem." *Id.* (quoting *Spencer, White & Prentis, Inc. v. Pfizer Inc.*, 498 F.2d 358, 362 (2d Cir.1974)). *See also Hebel v. Ebersole*, 543 F.2d 14, 17 (7th Cir.1976).

#### 2. Discussion

■ BE & K contends this Court has diversity jurisdiction over McDowell's claims against BE & K because McDowell's claim against the Port has been, in effect, severed by the bankruptcy automat-

ic stay from those claims brought against BE & K.

11 U.S.C. § 362(a)(4) provides the filing of a petition under Title 11 of the Bankruptcy Code acts as an automatic stay of "any act to create, perfect, or enforce any lien against property of the estate." The property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

BE & K argues McDowell's lien foreclosure claim against the Port based on USG's reversionary interest in the utility corridors was stayed pursuant to the automatic stay triggered by § 362(a)(4) when USG filed its bankruptcy petition. BE & K further argues a *de facto* severance of McDowell's claim against the Port occurred as a result of the automatic stay. BE & K, however, offers no authority to support its *de facto* severance argument.

Resolution of McDowell's claim to foreclose on the property owned in part by the Port necessarily will involve determinations of whether McDowell's lien is valid and whether the lien should be allowed pursuant to Or.Rev.Stat. § 87.060(3). Determinations regarding the validity of the lien, the priority of interests in the property, and the ultimate disposition of the property affect the bankruptcy estate. McDowell's claim against the Port, therefore, appears to be subject to the automatic stay of § 362(a)(4).

The Court, however, need not decide whether the entire lien foreclosure claim is stayed because the stay would not affect diversity jurisdiction in any event. A stay of the foreclosure proceeding is not tantamount to dismissal of either USG or the Port. *See Stewart v. A.G. Edwards & Sons, Inc.*, 74 B.R. 26 (D.S.C.1987) (citing *David v. Hooker, Ltd.*, 560 F.2d 412, 418 (9th Cir.1977)) ("[S]tay of a suit pending in another court against the bankrupt is not a

dismissal of the suit nor does it deprive the court of jurisdiction."). The removal statute must be strictly construed because this Court is a court of limited jurisdiction. The Court, therefore, will not find jurisdiction in this matter on the basis of a *de facto* severance where jurisdiction otherwise does not exist.

■■■ Alternatively, the Court construes BE & K's argument as a Motion to Sever McDowell's lien foreclosure claim pursuant to Fed.R.Civ.P. 21. As noted, the Court may exercise its broad discretion to sever separate and discrete claims; however, it is an abuse of discretion to separate an essentially unitary issue. McDowell's lien foreclosure claim arises out of the same series of transactions and occurrences and involves common questions of law and fact with McDowell's remaining claims against USG and BE & K. *See* Fed.R.Civ.P. 20(a) (standards for permissive joinder of claims). Moreover, McDowell's construction lien foreclosure claim, in essence, is a statutory security interest for McDowell's *quantum meruit* claim against USG. These claims, therefore, are essentially one and the same.

McDowell's claims against BE & K are also inextricably intertwined with the lien foreclosure claim. McDowell alleges BE & K was acting as an agent of USG, and the entire relationship between McDowell and BE & K was for the benefit of USG. Thus, BE & K's actions and omissions may be the acts and omissions of USG, and USG may be ultimately responsible for McDowell's alleged loss. McDowell's claims against BE & K, in effect, may form the underlying basis for McDowell's lien foreclosure claim as to USG's property. The Court, therefore, has no discretion to sever McDowell's claims because they are part of a unitary problem. Even if it had the discretion, however, the Court would decline to exercise it because McDo-

well's claims are closely connected and involve overlapping issues of fact and law that should be resolved together.

For the foregoing reasons, the Port remains a party to this matter, and the Court cannot ignore its citizenship. Accordingly, the Court finds diversity of citizenship does not exist and removal on that ground was improper.

## II. Bankruptcy Jurisdiction

### A. Standards

28 U.S.C. § 1452(a) provides a party may remove any civil claim or cause of action to the federal district court for the district in which the state civil action is pending if the federal district court has jurisdiction over that claim or cause of action pursuant to 28 U.S.C. § 1334. 28 U.S.C. § 1334(b) provides "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

■■■ Proceedings that involve a cause of action created or determined by a statutory provision of Title 11 are proceedings "arising under" Title 11 for purposes of 28 U.S.C. § 1334. *In re Harris Pine Mills*, 44 F.3d 1431, 1435 (9th Cir.), *cert. denied*, 515 U.S. 1131, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995). Proceedings "arising in" a case under Title 11 are those administrative matters that are not based on any right expressly created by Title 11 but, nevertheless, would have no existence outside of the bankruptcy. *Id.* In other words, claims "arising under" Title 11 or "arising in" a case under Title 11 are those proceedings referred to as "core proceedings" and are specifically listed in the Bankruptcy Code in 28 U.S.C. § 157(b)(2). *Id.*

472

■ Proceedings "related to" a bankruptcy matter do not invoke a substantive right created by the federal bankruptcy law and could exist outside of the bankruptcy. *Id.* A proceeding is "related to" the bankruptcy if "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re American Hardwoods, Inc.,* 885 F.2d 621, 623 (9th Cir. 1989). A cause of action is "related to" the bankruptcy case "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* Claims that are "related to" the bankruptcy are "noncore proceedings" under the Bankruptcy Code. *In re Harris Pine Mills,* 44 F.3d at 1435. *See also* 28 U.S.C. § 157(b)(3).

### B. Discussion

BE & K argues this Court has jurisdiction over this matter because each of McDowell's claims is a core proceeding arising in or arising under USG's bankruptcy case. McDowell argues its claims against BE & K are separate and distinct from its claims against USG and, therefore, cannot "conceivably have an effect" on the bankruptcy proceedings.

### 1. Plaintiff's Lien Foreclosure Claim Against USG and the Port

28 U.S.C. § 157(b)(2) contains a laundry list of core proceedings; however, that list is not exclusive. 28 U.S.C. § 157(b)(2)(K) provides "determinations of the validity, extent, or priority of liens" are core proceedings. Specifically, an adversary proceeding brought by the bankruptcy trustee to invalidate or to avoid the enforcement of a lien on estate property constitutes a core proceeding. 28 U.S.C. § 157(b)(2)(B). It is unclear, however, whether a pre-petition state law statutory lien foreclosure claim

on property that became estate property when the petition was filed is also a core proceeding.

■ The Court, however, need not determine whether McDowell's lien foreclosure action is a core proceeding arising under Title 11 or arising in a Title 11 case because the lien foreclosure claim "could conceivably have an effect" on the estate being administered in bankruptcy. Accordingly, the Court finds McDowell's claim is, at a minimum, a proceeding related to the bankruptcy estate because USG's St. Helens property, including USG's reversionary interest in the three utility corridors, is property of the estate. A determination regarding McDowell's lien on that property could affect USG's interest. This Court, therefore, has original but not exclusive jurisdiction over McDowell's lien foreclosure claim because it is related to the pending bankruptcy proceeding.

### 2. McDowell's *Quantum Meruit* Claim Against USG

McDowell's only other claim against USG is a claim for *quantum meruit* or unjust enrichment based on state law. This quasi-contract claim does not fit into any of the specific categories of core proceedings listed in 28 U.S.C. § 157. Section 157, however, contains two catchall provisions: 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(O) respectively provide "matters concerning the administration of the estate," and "other proceedings affecting the liquidation of the assets of the estate" are core proceedings.

■ "[S]tate law and contract claims that do not specifically fall within the categories of core proceedings enumerated" in § 157, however, are not core proceedings "even if they arguably fit within the literal wording of the two catchall provisions." *In re Castlerock Properties,* 781 F.2d 159,

162 (9th Cir.1986). *See also Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 71–72, 102 S.Ct. 2858, 73 L.Ed.2d 598 (unconstitutional for bankruptcy court to determine a noncore state law contract dispute because the heart of the federal bankruptcy power is in restructuring debtor-creditor relations rather than adjudicating state-created private rights such as contract rights). Based on the foregoing principles, McDowell's unjust enrichment claim against USG, which was originally brought in state court, does not appear to be a proceeding arising under or arising in a Title 11 case because it is not a cause of action created by Title 11 or arising only in Title 11 cases. McDowell's state law unjust enrichment claim could have been brought in state court and, indeed, originally was filed there.

■ Without deciding whether McDowell's unjust enrichment claim is a core proceeding, the Court finds McDowell's unjust enrichment claim is at least a claim related to the bankruptcy proceeding. In *In re Castlerock Properties,* the court held state law claims against the bankruptcy debtor are proceedings related to the bankruptcy. 781 F.2d at 162. The underlying basis for McDowell's unjust enrichment claim is the same as its lien foreclosure action. McDowell's lien essentially acts as security for its unjust enrichment claim. If McDowell succeeds on its unjust enrichment claim, that claim "could conceivably have an effect" on property of the estate. Thus, this Court has jurisdiction over McDowell's unjust enrichment claim because it is a proceeding related to USG's bankruptcy case.

### 3. McDowell's Claims Against BE & K

■ If a state law contract claim asserted against a non-debtor does not fit within one of the express categories listed in 28 U.S.C. § 157(b)(2), it is not a core proceeding merely by virtue of the catchall provisions of § 157(b)(2)(A) or (O). *See In re Cinematronics,* 916 F.2d 1444, 1450 (9th Cir.1990) ("We find no clear expression of congressional intent to include within the catch-all categories of core proceedings state claims that relate to a bankruptcy proceeding but that exist against a non-debtor."). BE & K contends, nonetheless, McDowell's claims against it arise in or arise under USG's bankruptcy proceeding because those claims could be the subject of a proof of claim in the bankruptcy proceeding.

BE & K relies on a Ninth Circuit case that involved a creditor's request for relief from the bankruptcy automatic stay. *See In re Conejo Enterprises, Inc.,* 96 F.3d 346 (9th Cir.1996). In that case, the Ninth Circuit stated the bankruptcy court appropriately denied a creditor relief from the automatic stay on the basis that no proof of claim had been filed at that time. *Id.* at 352–53. The creditor subsequently filed a proof of claim. The Ninth Circuit remanded the case to the bankruptcy court because the creditor "subjected its claim to the core jurisdiction of the bankruptcy court" when it filed its proof of claim. *Id.* at 353. There is no evidence in this record that either McDowell or BE & K has filed as yet a proof of claim for McDowell's claims against BE & K in the Delaware Bankruptcy Court. Thus, McDowell's claims against BE & K do not constitute core proceedings even if BE & K's reading of *In re Conejo Enterprises, Inc.,* is correct.

In addition, the Ninth Circuit has held the determination of whether a plaintiff has a claim under state law and whether that claim should be allowed in a bankruptcy case are two separate decisions based on different legal standards. *In re*

*Tucson Estates, Inc.,* 912 F.2d 1162, 1167–68 (9th Cir.1990). Only the latter is a core proceeding under 28 U.S.C. § 157(b)(2)(B). *Id.*

Even though McDowell's state contract and tort claims against BE & K cannot be categorized as core proceedings merely because the bankruptcy court later may be asked to allow those claims, the Court, nevertheless, finds McDowell's claims against BE & K at a minimum are related to USG's bankruptcy. The Ninth Circuit has held bankruptcy jurisdiction exists over claims against nondebtors under limited circumstances. *Kaonohi Ohana, Ltd. v. Sutherland,* 873 F.2d 1302, 1306–07 (9th Cir.1989). In *Kaonohi Ohana,* the debtor owned a piece of real property on Kauai. *Id.* After agreeing to sell the property to Nancy Sutherland, the debtor reneged and sold the property to Sylvester Stallone for a higher price. *Id.* The debtor subsequently filed a petition for bankruptcy, and Sutherland filed an adversarial proceeding in the bankruptcy court in which she demanded specific performance by Stallone. *Id.* at 1303–04. The Ninth Circuit held the district court had subject matter jurisdiction over the claim against Stallone, the nondebtor, because whether Sutherland actually obtained the property from Stallone "could conceivably have an effect" on the estate and the amount of damages owed by the estate to Sutherland for breach of contract. *Id.* at 1306–07. The court held bankruptcy jurisdiction exists when "the litigation may alter potential obligations arising out of claims pending against the estate." *Id.* at 1306. *See also In re American Hardwoods, Inc.,* 885 F.2d at 622–24 (bankruptcy court had jurisdiction over a debtor's action against a nondebtor for injunctive relief from a state court judgment against the president and vice-president of the debtor even though those individuals were not debtors themselves because the state judgment "could conceivably have an effect" on the administration of the bankruptcy estate); *In re Cinematronics, Inc.,* 916 F.2d at 1450 (without discussion, the court assumed state law counterclaims against nondebtor principal shareholder and president of debtor corporation are noncore proceedings subject to bankruptcy court's jurisdiction).

Although McDowell argues BE & K remains separately and distinctly liable to McDowell for damages, the record demonstrates a judgment against BE & K "could conceivably have an effect" on USG's estate. In its Amended Complaint, McDowell alleges BE & K entered into subcontracts with McDowell on USG's behalf and as its agent. McDowell further asserts the subcontract agreements inured to the benefit of USG, and USG was the intended beneficiary of those subcontracts. Thus, McDowell's pleading demonstrates any judgment against BE & K on McDowell's contract and quasi-contract claims may affect the rights and liabilities of BE & K's principal, USG, and "could conceivably have an effect" on USG's pending bankruptcy. In addition, McDowell's tort claims against BE & K, which are based on alleged misrepresentations and fraud, also could affect USG's bankruptcy estate because of the alleged agency relationship between BE & K and USG and the possibility of equitable indemnification if McDowell or BE & K can show that BE & K's allegedly false or misleading statements were made in furtherance of the agency relationship and for USG's benefit.

McDowell correctly argues there are ambiguities in the contract between USG and BE & K regarding contractual indemnification for McDowell's claims. The record, however, establishes the possibility that USG may be contractually responsible for the omissions and acts of BE & K alleged by McDowell. As McDowell ac-

knowledged during oral argument, the standard for "related to" jurisdiction is "very broad." Based on the foregoing, the Court finds McDowell's state law claims are related to USG's pending bankruptcy because the claims "could conceivably have an affect" on USG's liabilities. This Court, therefore, has subject matter jurisdiction over McDowell's state law claims against BE & K.

## III. Abstention and Equitable Remand

### A. Standards

■ 28 U.S.C. § 1334(c)(2) provides certain proceedings removed to federal court on the basis of bankruptcy jurisdiction must be remanded to state court. Mandatory abstention is required if the following six elements are present: 1) a party has timely moved for abstention, 2) the proceeding is based upon a state law claim or cause of action, 3) the claim or cause of action is related to a case under Title 11 but is not a proceeding arising under or arising in a Title 11 case (i.e., it is not a core proceeding), 4) no other basis for federal jurisdiction exists, 5) an action is commenced in state court, and 6) the matter can be timely adjudicated in a state forum. *Id.*

Under 28 U.S.C. § 1334(c)(1), the doctrine of permissive abstention allows the district court to abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law" from hearing a proceeding arising under Title 11, or arising in or related to a case under Title 11.

■ The mandatory and permissive abstention principles of § 1334 apply only in cases in which there is a related proceeding pending in state court. *Security Farms v. International Broth. of Teamsters, Chauffers, Warehousemen & Helpers,* 124 F.3d 999, 1009–10 (9th Cir.1997). When a case has been removed to federal court, the state case ceases to exist and

§ 1334 is no longer applicable. *Id.* The appropriate standard to apply in removal cases, therefore, is the equitable remand standard of § 1452(b). *Id.* Under § 1452(b), the district court may remand a claim or cause of action removed to federal court arising under Title 11, or arising in or related to a Title 11 case "on any equitable ground."

### B. Discussion

McDowell contends the Court lacks the power to accept jurisdiction over McDowell's claims against BE & K even if its claims relate to USG's Title 11 case. In support of its argument, McDowell relies on *Kennilworth v. Crisman,* 2001 WL 30534 (N.D.Cal.2001). The *Kennilworth* court held it was required, pursuant to the mandatory abstention doctrine of 28 U.S.C. § 1334(c)(1), to abstain from hearing the plaintiff's state law claims removed to federal court by the defendant even though the claims related to a pending bankruptcy matter and the court otherwise would have jurisdiction over the claims. As noted, however, the Ninth Circuit explicitly has held the abstention principles of § 1334 do not apply in removal cases. *Security Farms,* 124 F.3d at 1009–10. The *Kennilworth* court did not discuss or distinguish *Security Farms.* This Court is bound by Ninth Circuit precedent and, therefore, declines to follow *Kennilworth.* Accordingly, the Court finds it cannot abstain from hearing McDowell's claims removed to this Court based on § 1334. McDowell's Motion to Remand, therefore, is denied to the extent it requests the Court to abstain under § 1334.

McDowell also moves the Court to exercise its equitable powers under 28 U.S.C. § 1452(b) to remand this action to state court. The Court declines to reach the merits of McDowell's Motion to Remand to the extent it is based on the principles of equitable remand because the Court is obligated by LR 2100.1 to refer any matter

related to a bankruptcy proceeding to the Bankruptcy Court of this District as explained below. The Bankruptcy Court, however, will have the power to entertain McDowell's Motion to Remand pursuant to LR 2100.7.

### REFERENCE TO BANKRUPTCY COURT FOR THE DISTRICT OF OREGON

Although neither party contended this Court is required to refer all matters arising under Title 11, or arising in or related to bankruptcy cases to the Bankruptcy Court for the District of Oregon, the Court raises the issue *sua sponte.*

LR 2100.1 provides the District Court shall refer to the Bankruptcy Court for this District "all cases under Title 11 and all proceedings arising under Title 11 or arising in or related to cases under Title 11." As explained above, the Court finds it has jurisdiction over this action pursuant to 28 U.S.C. § 1334(b) because this matter is related to a case under Title 11. Pursuant to LR 2100.1, therefore, the Court refers this action to the Bankruptcy Court for the District of Oregon subject to any subsequent recommendation by the Bankruptcy Court to withdraw the reference pursuant to LR 2100.4. The parties' undecided pending motions, including BE & K's Motion to Stay Proceedings, or in the Alternative, Transfer (# 3); BE & K's Motion to Dismiss and Motion to Strike (# 5); and McDowell's Motion to Remand (# 11) to the extent it is based on equitable principles also are referred to the Bankruptcy Court.

### CONCLUSION

Based on the foregoing, McDowell's Objection to the Ritch Declaration (# 17) is **OVERRULED**. BE & K's Objections to the Cahn Affidavit (# 19) are **SUSTAINED**, and the Court **STRIKES** the exhibits to the Cahn Affidavit. McDowell's Motion to Remand (# 11) is **DE-** NIED to the extent it is based on the grounds that this Court lacks jurisdiction over the matter and that the Court should abstain from hearing this matter pursuant to 28 U.S.C. § 1334. In addition, pursuant to LR 2100.1, the Court *sua sponte* **REFERS** this matter to the United States Bankruptcy Court for the District of Oregon subject to any later recommendation by the Bankruptcy Court to withdraw the reference pursuant to LR 2100.4. The reference includes the following pending motions: BE & K's Motion to Stay Proceedings, or in the Alternative, Transfer (# 3); BE & K's Motion to Dismiss and Motion to Strike (# 5); and McDowell's Motion to Remand (# 11) to the extent it is based on equitable principles.

IT IS SO ORDERED.