**IN RE: TURNER GRAIN MERCHANDISING, INC., Debtor.**

**Turner Grain Merchandising, Inc., Plaintiff**

**v.**

**LTD Farms Partnership and Hargrove Farms, Inc., Defendants**

**CASE NO. 2:14–bk–15687J**

**AP NO. 2:14–ap–01119**

United States Bankruptcy Court, E.D. Arkansas, **Helena Division.**

Signed January 19, 2016

Kevin P. Keech, Keech Law Firm, PA, Little Rock, AR, for Plaintiff.

William A. Waddell, Friday, Eldredge & Clark, Little Rock, AR, for Defendants.

### ORDER

Phyllis M. Jones, United States Bankruptcy Judge

The issues before the Court are whether the Court should sever, abstain from hear-ing, and remand certain claims in an action removed to this Court from the Circuit Court of Arkansas County, Arkansas. The matter was heard on April 2, 2015. After the hearing, the Court took the matter under advisement. For the reasons stated below, the Court will sever Counts II and III from Count I, abstain from hearing Counts II and III, and remand Counts II and III to the Circuit Court of Arkansas County, Arkansas. The following consti-tutes the Court's findings of fact and con-clusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Proce-dure.

## I. BACKGROUND

### A. State Court Lawsuit

On August 27, 2014, LTD Farms Part-nership and Hargrove Farms, Inc. (the "**Plaintiffs**") filed a complaint (the "**Com-plaint**") against Neauman Coleman, Jason Coleman, Dale Bartlett, Turner Grain Merchandising, Inc., and Helena National Bank in the Circuit Court of Arkansas County, Arkansas, Northern District, which was assigned Case No. CV–2014–076ND (the "**State Court Action**"). (Compl., AP Doc. Nos. 1–2, at 3–11, 11–1 & 11–2).[1] In the Complaint, the Plaintiffs allege that on March 27, 2014, they orally contracted with Turner Grain Merchandis-ing, Inc. (the "**Debtor**") for the sale of grain and that the Debtor, through an agent, collected the grain from the Plain-tiffs' farms but failed to pay Plaintiffs as promised. (Compl. ¶¶ 9–10). The Plain-tiffs allege they demanded payment on various occasions from Jason Coleman and Chris Taylor, employees of the Debtor,

---

1. References to "AP Doc." shall refer to docu-ments filed in the instant adversary proceed-ing, AP No. 2:14–ap–01119. The Complaint, without exhibits, is attached to the Notice of Removal filed in the instant adversary pro-ceeding. (Notice of Removal, AP Doc. No. 1).

An Amended Notice of Removal was filed by the Debtor on January 21, 2015, to which the full Complaint, complete with exhibits, is at-tached. (Am. Notice of Removal, AP Doc. No. 11).

who promised "payment would be made promptly." (Compl. ¶ 11).

In the Complaint, the Plaintiffs further assert that on August 11, 2014, Chris Taylor traveled to the home of Terry Dabbs, a representative of both Plaintiffs, and presented two checks to Mr. Dabbs, each in the amount of $67,780.01. (Compl. ¶¶ 11–12; Exs. B–C to Compl.). One check was made payable to Plaintiff LTD Farms Partnership and Relyance Bank and was deposited at Relyance Bank on August 12, 2014. (Compl. ¶ 13; Ex. C to Compl.). The second check was made payable to Plaintiff Hargrove Farms, Inc. and was deposited at Farmers & Merchants Bank on August 13, 2014. (Compl. ¶ 14; Ex. B to Compl.). The Plaintiffs allege that Jason Coleman was a signatory on the account maintained by the Debtor at Helena National Bank upon which the two checks were written. (Compl. ¶ 16). The Plaintiffs further contend that unbeknownst to them, on August 12, 2014, Jason Coleman executed a power of attorney in favor of Neauman Coleman. (Compl. ¶ 15). They allege that Neauman Coleman instructed Helena National Bank to freeze the Debtor's bank account upon which the two checks were written, which the bank did. (Compl. ¶¶ 15–17).

In the Complaint, the Plaintiffs further assert, upon information and belief, that the power of attorney was limited only to the personal business of Jason Coleman and did not permit Neauman Coleman to transact business on behalf of the Debtor. (Compl. ¶ 15). Plaintiffs allege, again upon information and belief, that Helena National Bank notified Neauman Coleman that the power of attorney was insufficient to freeze the account and Neauman Coleman asked Dale Bartlett, a former officer of the Debtor, to issue a stop payment order on the account, which Mr. Bartlett did. (Compl. ¶¶ 19–20). The Plaintiffs contend that upon Mr. Bartlett's instruction, Helena National Bank again froze the Debtor's bank account and stopped payment on all checks from the account. (Compl. ¶¶ 19–21). Plaintiffs allege Mr. Bartlett, while once an officer of the Debtor, did not have authority to issue the stop payment order because he was removed as an officer on July 12, 2014, prior to his instruction to Helena National Bank to stop payment on all checks. (Compl. ¶¶ 16, 20). The Plaintiffs state that the two checks delivered to them on August 11, 2015 were returned as "Not Authorized." (Compl. ¶¶ 22, 24).

The Plaintiffs bring three causes of action against the defendants in the State Court Action. Count I of the Complaint is a claim for breach of contract. In Count I of the Complaint, the Plaintiffs seek judgments against only the Debtor for breach of the alleged oral contracts between Plaintiffs and Debtor in the amount of the returned checks ($67,780.01 each), plus interest and attorneys' fees. (Compl. ¶¶ 26–33).

Count II of the Complaint is a claim for violation of the Arkansas Deceptive Trade Practices Act. In Count II, the Plaintiffs allege that the Debtor "acting through" Jason Coleman, Neauman Coleman, and/or Dale Bartlett engaged in a deceptive trade practice in violation of state law. (Compl. ¶¶ 35–37). They allege Jason Coleman and Neauman Coleman "directly or indirectly controlled" the Debtor and knew or should have known of the Debtor's violation of the Arkansas Deceptive Trade Practices Act. (Compl. ¶ 38). The Plaintiffs allege Jason Coleman and Neauman Coleman are jointly and severally liable to the Plaintiffs for the amount of the returned checks ($67,780.01 each), plus attorney's fees. (Compl. ¶¶ 38–39).

Count III of the Complaint is a claim for declaratory judgment. In Count III, the

Plaintiffs seek a declaratory judgment stating that the power of attorney executed by Jason Coleman in favor of Neauman Coleman did not give Neauman Coleman authority to act on behalf of the Debtor or freeze the Debtor's bank account, that Neauman Coleman's attempt to do so was void, and that Helena National Bank did not act according to the law in freezing the account. (Compl. ¶ 43(a)-(d)). The Plaintiffs further seek a declaration that Dale Bartlett did not have authority to freeze the Debtor's bank account or stop payment of the checks given to Plaintiffs, that Helena National Bank did not act according to the law in freezing the Debtor's account on Mr. Bartlett's instructions, that the bank did not use ordinary care in its dishonor of the checks, and that the bank wrongfully dishonored the checks. (Compl. ¶ 43(e)-(i)).

In their prayer for relief, the Plaintiffs request *in personam* judgments against the Debtor, Jason Coleman, and Neauman Coleman in the amount of $67,780.01 for each Plaintiff, with interest, and for a declaratory judgment that Neauman Coleman, Dale Bartlett, and Helena National Bank did not have authority to freeze the Debtor's bank account or stop payment on the checks given to Plaintiffs.

According to the record, the Complaint was served on all five defendants and two answers to the Complaint have been filed. The first answer was filed on September 10, 2014, on behalf of the Debtor "and Jason Coleman and Dale Bartlett as officers, directors and shareholders of [the Debtor]" (the **"Turner Grain Answer"**). (Turner Grain Answer, AP Doc. No. 1–2 at 37–39). In the Turner Grain Answer, the defendants request a "trial by jury of all controverted issues of fact arising herein." (Turner Grain Answer ¶ 8). The second answer was filed on September 24, 2014, on behalf of Neauman Coleman (the **"Neauman Coleman Answer"**). (Neauman Coleman Answer, AP Doc. No. 1–2 at 40–46). In the Neauman Coleman Answer, Mr. Coleman "demands a trial by jury as is Defendant's right under the Constitution and laws of the United States and the [S]tate of Arkansas." (Neauman Coleman Answer ¶ 54).

On September 10, 2014, a notice of bankruptcy filing was filed in the State Court Action, indicating that Defendant Dale Bartlett had filed for relief under the provisions of Chapter 12 of the United States Bankruptcy Code.[2] (Notice of Bankr.Filing, AP Doc. No. 1–2 at 34–36). On September 25, 2015, Helena National Bank filed a motion to dismiss the declaratory judgment claim to which the Plaintiffs filed a response on October 1, 2014. (Mot. to Dismiss, AP Doc. No. 1–2 at 47–48; Resp. to Mot. to Dismiss, AP Doc. No. 1–2 at 59–64). No order appears in the record on the motion to dismiss. On September 30, 2015, Jason Coleman filed a motion for extension of time to answer the Complaint. (Mot. for Enlargement of Time, AP Doc. No. 1–2 at 56–58). No order appears in the record on the motion for extension of time. On October 24, 2014, a suggestion of bankruptcy was filed in the State Court Action, indicating the Debtor had filed a petition for relief under the provisions of Chapter 11 of the Bankruptcy Code. (Suggestion of Bankr., AP Doc. No. 1–2 at 67–68).

## B. Bankruptcy Proceedings

The Debtor filed its petition under Chapter 11 of the Bankruptcy Code on

---

**2.** Dale Bartlett filed a petition for relief under the provisions of Chapter 12 of the United States Bankruptcy Code on September 5, 2014, which case has been converted to a Chapter 7 case and remains pending before the Bankruptcy Court for the Eastern District of Arkansas as Case No. 2:14–bk–14794.

October 23, 2014.[3] On December 3, 2014, the Debtor filed a Notice of Removal, removing the State Court Action to this Court.[4] (Notice of Removal, AP Doc. No. 1). On January 7, 2015, the Plaintiffs filed a Motion to Sever, to Abstain and to Remand Claims Against Neauman Coleman, Jason Coleman, and Helena National Bank (the "**Motion**"), and brief in support of same. (Mot., AP Doc. No. 6; Br. in Supp. of Mot., AP Doc. No. 7). On January 21, 2015, the Debtor filed a Response to the Motion (the "**Response**"). (Resp., AP Doc. No. 12). On April 2, 2015, the Court heard the Motion and Response. After the hearing, the Court took the matter under advisement.

In the Motion, the Plaintiffs request that the Court "sever and abstain from hearing the state-law claims against Neauman Coleman, Jason Coleman and Helena National Bank and . . . remand those claims to the Arkansas County Circuit Court for further proceeding." (Mot. ¶ 4). Essentially, the Plaintiffs request severance of Counts II and III from Count I, and request the Court abstain from hearing and remand Counts II and III to the state court. In the Motion, the Plaintiffs state that the State Court Action can only constitute a core proceeding as to the Debtor, and the Plaintiffs assert they will file proofs of claim and proceed through the claims process against the Debtor. (Mot. ¶ 3). As to the nondebtor defendants, the Plaintiffs request permission to proceed in state court against Neauman Coleman, Jason Coleman, and Helena National Bank. The Plaintiffs argue their claims against the nondebtors do not require the Debtor as a necessary party and do not involve property of the estate. (Mot. ¶ 3).

In its Response, the Debtor argues the Court should retain jurisdiction over the entire State Court Action. First, the Debtor argues the Motion may be untimely as it was filed more than thirty days after the Notice of Removal was filed. (Resp. ¶ 3). Second, the Debtor argues that severance is improper because all the claims in the Complaint are based on "an alleged oral contract between the Debtor and the [Plaintiffs]." (Resp. ¶ 4–6). The Debtor expounds on this argument by arguing that Count I is alleged only against the Debtor, Count II is alleged only against the Debtor acting through Jason Coleman, Neauman Coleman, and Dale Bartlett, and Count III is a request for declaratory judgment which involves the Debtor and "directly addresses the alleged breach of the contract" between Debtor and Plaintiffs. (Resp. ¶ 6). The Debtor further argues that the issues in the State Court Action will require the same witnesses and proof, and that the Debtor will be prejudiced if some claims are severed because the claims involve the Debtor, but the Debtor would not be named as a party. (Resp. ¶¶ 7–8).

Third, the Debtor argues against severance and remand because after filing its bankruptcy petition, the Debtor initiated a separate adversary proceeding against Helena National Bank concerning the bank account that is at issue in the State Court Action, which adversary proceeding has been docketed in this Court as AP No. 2:14–ap–01110 (the "**Turnover Action**"). The Debtor argues that severance and remand may "prejudice the Debtor's ability to prosecute and collect any judgment in the [Turnover Action], as the Arkansas

---

3. The Debtor's bankruptcy case was converted to a case under the provisions of Chapter 7 of the United States Bankruptcy Code on May 15, 2015.

4. An Amended Notice of Removal was filed by the Debtor on January 21, 2015. (Am. Notice of Removal, AP Doc. No. 11).

County Court and this Court may reach differing conclusions concerning Helena National Bank's liability." (Resp. ¶ 8). The Debtor argues there will be no prejudice to Plaintiffs if the Court retains jurisdiction over the State Court Action because all parties will benefit from litigating the issues in one forum. (Resp. ¶ 9).

At the hearing on April 2, 2015, counsel for the Plaintiffs again reiterated that the Plaintiffs seek severance, abstention, and remand of the claims against only the nondebtors, Neauman Coleman, Jason Coleman, and Helena National Bank. (Tr. at 3–4).[5] The Plaintiffs do not seek severance, abstention, or remand of the claims against Dale Bartlett, who is in bankruptcy, or the Debtor. (Tr. at 4). The Plaintiffs also argued at the hearing that their claims against the nondebtor defendants are state law claims, are not dependent on any claim against the Debtor, and are not core proceedings. (Tr. at 4–5).

As to Count II, counsel for Plaintiffs specified that it is a state law claim for violation of the Arkansas Deceptive Trade Practices Act against Neauman Coleman and Jason Coleman that is "not dependent on Turner Grain" and not dependent on a finding of a contract between the Plaintiffs and Debtor, which is the basis for Count I. (Tr. at 6). At the hearing, counsel for Plaintiffs further explained that based on information obtained during discovery, the Plaintiffs intend to amend the state law claims against Jason Coleman and Neauman Coleman, and will not "assert anything that's dependent on Turner Grain." (Tr. at 5–6). Because Count II alleges a state law cause of action against nondebtor parties, the Plaintiffs argued that it would be easier and quicker for the state court to hear the claims against Jason Coleman

and Neauman Coleman. (Tr. at 7). The Plaintiffs also expressed their desire to attempt to collect what is owed to them through actions against Jason Coleman and Neauman Coleman and possibly certain insurance policies. (Tr. at 18).

As to Count III, the Plaintiffs argued at the hearing that they are not seeking a monetary judgment against Helena National Bank, but are seeking declaratory relief only. (Tr. at 8). In addressing the Debtor's argument that Count III may have an effect on the Turnover Action, counsel for Plaintiffs represented to the Court that the Plaintiffs would not pursue property of the estate in the State Court Action. (Tr. at 7–8, 17).

The Debtor argued at the hearing that even if the Plaintiffs filed an amended complaint seeking relief against only Jason Coleman and Neauman Coleman for deceptive trade practices, the issues involved in Count II are "so integrally entwined" with issues involving the Debtor and Helena National Bank it would be impossible to sever Count II from the remainder of the State Court Action. (Tr. at 11–12). The Debtor stated that while the claims in the State Court Action involve different legal issues, the same factual issues are involved and will require much of the same testimony and documentary evidence. (Tr. at 13–14).

As to Count III, the Debtor elaborated on its argument that the outcome of Count III may affect the Turnover Action and property of the Debtor's bankruptcy estate. The Debtor stated at the hearing that the two returned checks were not the only checks dishonored by Helena National Bank. (Tr. at 9). Rather, the Debtor argued the bank did not honor approxi-

---

**5.** "Tr." refers to the transcript of the hearing held before this Court on April 2, 2015 on the

Motion and Response.

mately one million dollars in checks drawn on the account with Helena National Bank pursuant to the stop payment order, although no evidence of this was introduced at trial. (Tr. at 9). Counsel for the Debtor further represented to the Court that Helena National Bank has not turned over the approximate $300,000.00 remaining in the Debtor's bank account, which is the subject of the Turnover Action, in fear of the bank being subjected to multiple competing claims to those funds. (Tr. at 9, 16–17). The Debtor also alleged that if Helena National Bank is found responsible for its actions in dishonoring the checks in the State Court Action, even if the relief is declaratory in nature, the bank will not turn over the funds that are the subject of the Turnover Action and will claim those funds as a setoff in the future, which the Debtor argued would affect the Debtor's bankruptcy estate and delay the relief sought in the Turnover Action. (Tr. at 10, 14).

## II. JURISDICTION

This Court has jurisdiction over the removed action pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a). The Motion itself is a core proceeding arising under title 11 of the United States Code. *Twyman v. Wedlo, Inc.*, 204 B.R. 1006, 1011 n. 4 (Bankr.N.D.Ala.1996) ("[W]hile a bankruptcy court may ultimately determine that a civil action is itself a non-core matter, the determinations of whether the removal of that action was proper, whether the bankruptcy court should abstain in the matter or whether the matter should be remanded to the state court, are themselves core matters.").

In addition, section 1452(a) of title 28 of the United States Code provides that a "party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil ac-

tion is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a) (2012). Section 1334(b) of title 28 provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b) (2012). District courts may refer these proceedings to bankruptcy judges pursuant to 28 U.S.C. § 157(a) (2012). In Arkansas, the United States District Courts for the Eastern and Western Districts of Arkansas have referred all cases and proceedings arising under title 11 of the United States Code or arising in or related to a case under title 11 to the bankruptcy judges for the districts as provided in 28 U.S.C. § 157(a). E.D., W.D. Ark. R. 83.1 ¶ I.

 A proceeding "arises under" title 11 of the United States Code "if a claim asserted is created by or based on a provision of the bankruptcy code." *Frelin v. Oakwood Homes Corp.*, 292 B.R. 369, 376 (Bankr.E.D.Ark.2003) (citing *Nat'l City Bank v. Coopers & Lybrand*, 802 F.2d 990, 994 (8th Cir.1986)). A proceeding "arises in" a case under title 11 of the United States Code "if it is not based on any right expressly created by the bankruptcy code but has no existence outside the bankruptcy case." *Id.* at 377 (citing *Rouse v. Pinegar Chevrolet, Inc. (In re Chambers)*, 125 B.R. 788, 793 (Bankr.W.D.Mo.1991)). A proceeding is "related to" a case under title 11 of the United States Code if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action and which in any way impacts upon the handling and administration of the bankrupt estate." *Dogpatch Props., Inc. v. Dogpatch U.S.A., Inc. (In re*

*Dogpatch U.S.A., Inc.),* 810 F.2d 782, 786 (8th Cir.1987) (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)).

Proceedings that "arise under" the bankruptcy code or "arise in" a bankruptcy case are classified as core proceedings, and proceedings that are merely "related to" the bankruptcy case are classified as noncore proceedings. 28 U.S.C. § 157(b)-(c); *Stern v. Marshall,* 564 U.S. 462, 131 S.Ct. 2594, 2605, 180 L.Ed.2d 475 (2011); *Schmidt v. Klein Bank (In re Schmidt),* 453 B.R. 346, 350 (8th Cir. BAP 2011) (citing *In re Farmland Indus., Inc.,* 567 F.3d 1010, 1017 (8th Cir.2009); *Stern,* 131 S.Ct. at 2604); *C & B, L.L.C. v. Grubbs Emergency Servs., Inc. (In re Grubbs Constr. Co.),* 305 B.R. 476, 481 (Bankr. W.D.Ark.2003) (citing *Specialty Mills, Inc. v. Citizens State Bank,* 51 F.3d 770, 773–74 (8th Cir.1995)).

The Plaintiffs argue the claims against the nondebtor defendants are "at most" related to the Debtor's bankruptcy case, and that the State Court Action could only constitute a core proceeding as to the Debtor. (Tr. at 4). The Debtor argues in opposition that all matters in the State Court Action are core because the claims run against the Debtor, or are "inextricably tied" to the relief requested against the Debtor. (Resp. ¶ 11).

■ The Court disagrees with the Debtor's argument that the State Court Action is a core proceeding. In the State Court Action, the Plaintiffs bring claims against the defendants for breach of contract, violation of the Arkansas Deceptive Trade Practices Act, and declaratory judgment relating to Helena National Bank's freezing of the Debtor's bank account and dishonoring checks payable to the Plaintiffs. These claims are not created by or based on a provision of the Bankruptcy Code; therefore, they do not "arise under" the Bankruptcy Code. Likewise, the claims in the State Court Action are not dependent upon the existence of a bankruptcy case, but rather have an existence outside of bankruptcy. The claims, therefore, do not "arise in" the Debtor's bankruptcy case. While the claims in the State Court Action do not arise under the Bankruptcy Code or arise in the Debtor's bankruptcy case, the outcome of the State Court Action could conceivably have an effect on the Debtor's bankruptcy estate, and the outcome of the State Court Action could alter the Debtor's rights and liabilities. The Court accordingly finds that it has "related to" jurisdiction over the State Court Action, and the State Court Action is a therefore a noncore proceeding.

Having determined that the Court has "related to" jurisdiction over the State Court Action, the Court must next consider whether it should sever any claims against the nondebtor defendants to the State Court Action as requested by Plaintiffs.

## III. SEVERANCE

■ Rule 21 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7021 of the Federal Rules of Bankruptcy Procedure, provides that the Court may "sever any claim against a party." Fed. R. Civ. P. 21; Fed. R. Bankr. P. 7021. The Court enjoys broad discretion to sever claims under Rule 21. *Chi. Rock Island & Pac. R.R. Co. v. Williams,* 245 F.2d 397, 404 (8th Cir.1957) (finding Rule 21, along with other procedural rules, gives the court "broad discretion in these matters of procedure"); *Lustgraaf v. Behrens (In re Green),* No. 8:08CV335, 2012 WL 5050594, at *2 (Bankr.D.Neb. Oct. 18, 2012) (stating Rule 21 gives the court "broad discretion to sever separate and discrete claims"), *adopted by sub nom. Lustgraaf v. Sunset Fin. Servs., Inc.,* 2012 WL 5996955

(D.Neb. Nov. 7, 2012). The Court may not, however, separate "an essentially unitary issue." *In re Green*, 2012 WL 5050594, at *2 (citing *McDowell Welding & Pipefitting, Inc. v. U.S. Gypsum Co.*, 285 B.R. 460, 471 (D.Or.2002)).

In determining whether severance is proper, courts consider various factors, including the following:

> (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting the severance will be prejudiced if it is not granted.

*Id.* (citing *German v. Fed. Home Loan Mtg. Corp.*, 896 F.Supp. 1385, 1400 (S.D.N.Y.1995)). "Courts may order a Rule 21 severance when it will serve the ends of justice and further the prompt and efficient disposition of litigation." *Tab Exp. Int'l, Inc. v. Aviation Simulation Tech., Inc.*, 215 F.R.D. 621, 623 (D.Kan. 2003). "Severance is particularly appropriate where ... the court determines that venue should be transferred as to some claims or parties." *Id.* at 624.

The Plaintiffs argue the claims against the nondebtor defendants should be severed. Essentially, Plaintiffs request severance of Counts II and III from Count I. The Debtor opposes severance and argues that severance is improper because while the claims in the State Court Action involve different legal issues, the same factual issues are involved and will require much of the same testimony and documentary evidence. (Tr. at 13–14). The Debtor also argues that all of the claims in the State Court Action are based on the alleged oral contract between the Debtor and Plaintiffs. (Resp.¶ 6). In addition,

the Debtor argues it will be prejudiced if the claims are severed because the outcome of Count III may affect the Turnover Action and property of the Debtor's bankruptcy estate. Finally, the Debtor argues that the Plaintiffs will not be prejudiced if severance is denied because all issues can be decided in one forum. Each of the four factors will be analyzed below.

The first factor, whether the issues sought to be tried separately are significantly different from one another, weighs in favor of severance. Count I is a breach of contract claim against only the Debtor. The breach of contract alleged is the Debtor's failure to pay the Plaintiffs for grain picked up by the Debtor's agent pursuant to an alleged oral contract between the Plaintiffs and the Debtor. Count I seeks *in personam* judgments against the Debtor in favor of each Plaintiff in the amount of $67,780.01, plus interest and attorney fees. The Plaintiffs represented to the Court at the hearing that they intend to proceed against the Debtor only through the claims allowance process. (Tr. at 4). Counts II and III, on the other hand, primarily involve nondebtor defendants. Count II is a claim for violation of the Arkansas Deceptive Trade Practices Act. In Count II, while the Plaintiffs make allegations against "Turner Grain, acting through" various individuals, the Plaintiffs seek to hold nondebtors Jason Coleman and Neauman Coleman individually liable for alleged deceptive trade practices. In fact, in Count II the Plaintiffs seek *in personam* judgments against Jason Coleman and Neauman Coleman, jointly and severally "for the amounts due to them as alleged herein." (Compl. ¶ 38). Count II does not seek damages against the Debtor in addition to the damages sought in Count I for the alleged breach of contract. In addition, counsel for the Plaintiffs stated the Plaintiffs intend to amend the state

law claims against Jason Coleman and Neauman Coleman and will not make any assertions against the Debtor.

In Count III, the Plaintiffs seek a declaratory judgment regarding Helena National Bank's actions in freezing the Debtor's bank account upon the instructions of Neauman Coleman and Dale Bartlett. The Plaintiffs do not seek damages in Count III and do not seek relief against the Debtor. None of the issues raised in Count III, nor any of the declarations sought by the Plaintiffs in Count III, appear to involve any of the facts raised in Count I, but do appear related to Count II. Therefore, the first factor weighs in favor of severing Counts II and III from Count I.

The second factor, whether the separable issues require the testimony of different witnesses and different documentary proof, also weighs in favor of severance. Again, the Plaintiffs represented to the Court at the hearing that they intend to proceed against the Debtor only through the claims allowance process. (Tr. at 4). To proceed against the Debtor through the claims allowance process, the Plaintiffs must file proofs of claim in accordance with the Bankruptcy Code and Rules. To proceed against the nondebtor defendants on Counts II and III, the Plaintiffs will have to prove violation of the Arkansas Deceptive Trade Practices Act, wrongful dishonor, and/or other wrongful conduct. The Debtor even admitted at the hearing that the "core issue[s]" in the state court

proceeding will include whether the power of attorney issued by Jason Coleman to Neauman Coleman was valid such that Neauman Coleman could stop payment on checks written on the Debtor's bank account at Helena National Bank. (Tr. at 13). The testimony and documentary evidence needed to prove the allegations of Counts II and III at a trial on the merits will thus be much different than the testimony and evidence used to establish the amount due Plaintiffs by the Debtor through the claims allowance process.

Likewise, the third factor, whether the party opposing the severance will be prejudiced if it is granted, weighs in favor of severance. The Debtor will not be forced to defend two separate actions if the claims are severed because the Plaintiffs are proceeding against the Debtor through the claims process, and pursuant to section 704(a)(5) of the Bankruptcy Code, the Chapter 7 Trustee is charged with examining proofs of claim and objecting to any improper claim. *See* 11 U.S.C. § 704(a)(5) (2012). Furthermore, the Plaintiffs have represented to the Court that they intend to only proceed against the nondebtor defendants, not the Debtor nor property of the estate in the severed claims. Moreover, to the extent the Plaintiffs are successful and collect part of their claims against Jason Coleman and/or Neauman Coleman through Count II, the Plaintiffs' claims against the Debtor may be reduced accordingly. The Court therefore finds that the Debtor will not likely be prejudiced by severance.[6]

---

6. While the Court acknowledges the Debtor's concern that a ruling on Count III may affect the Turnover Action, the automatic stay will continue in effect as to the Debtor, property of the Debtor, and property of the estate following abstention and remand. *See* 28 U.S.C. § 1334(d) ("Subsection (c) and this subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section

applies to an action affecting the property of the estate in bankruptcy."); *Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.)*, 96 F.3d 346, 352 (9th Cir.1996) ("[A] finding that mandatory abstention applies to the underlying state action does not preclude denial of relief from § 362's automatic stay."); *see also Pursifull v. Eakin*, 814 F.2d 1501, 1505 (10th Cir.1987); *In re Jefferson Cty. Ala.*, 484 B.R. 427, 439 (Bankr.N.D.Ala.

The fourth factor, whether the party requesting the severance will be prejudiced if it is not granted, weighs in favor of severance. The Plaintiffs seek to pursue nondebtor defendants, who may be covered by insurance policies, separately from the Debtor. Without the Debtor and without the complexities involved in the Debtor's bankruptcy case, Counts II and III may be more quickly and efficiently adjudicated in a separate proceeding. Severance will thus aid in the efficient disposition of the claims against the nondebtor defendants. Therefore, the Court finds the Plaintiffs may be prejudiced if they are not allowed to proceed separately against the nondebtor defendants.

Based on the foregoing, the Court accordingly finds that the four enumerated factors weigh in favor of severance.

In addition to the enumerated factors, the Court finds further support for severance because "[s]everance is particularly appropriate where ... the court determines that venue should be transferred as to some claims or parties." *Tab Exp. Int'l, Inc.* 215 F.R.D. at 624. Here, the Court also finds severance appropriate because, as stated more fully below, the Court will abstain from hearing Counts II and III and will remand Counts II and III to the Circuit Court of Arkansas County, Arkansas.

For the foregoing reasons, Counts II and III will be severed from Count I. The Court next addresses abstention and remand of Counts II and III.

## IV. ABSTENTION AND REMAND

Abstention is governed by 28 U.S.C. § 1334(c). There are two types of abstention: mandatory and permissive. A split of authority divides the courts regarding whether abstention applies to removed cases. One view is that "abstention does not apply to a removed case because there is no parallel proceeding in state court from which to abstain (because the proceeding has been removed to federal court)." *Frelin,* 292 B.R. at 380 (discussing *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers,* 124 F.3d 999, 1010 (9th Cir.1997)). However, this Court will follow the reasoning in *Frelin,* which held that the abstention provisions continue to apply to removed cases. *Id.* at 381; *see also In re Grubbs Constr. Co.,* 305 B.R. at 482–83 (declining to follow the line of cases holding that abstention does not apply to removed cases). The Court will also evaluate whether the State Court Action should be remanded to the Circuit Court for Arkansas County, Arkansas. Remand is governed by 28 U.S.C. § 1452(b).

### A. Mandatory Abstention

Section 1334(c)(2) of title 28 of the United States Code governs mandatory abstention. It provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could

2012); *Dunkirk Ltd. P'ship v. TJX Cos., Inc.,* 139 B.R. 643, 646 (N.D.Ohio 1992); *Becker v. Randall Enters., Inc. (In re Randall Enters., Inc.),* 115 B.R. 292, 294–95 (Bankr.D.Colo. 1990). Thus, to the extent the funds remaining in the Debtor's bank account constitute property of the Debtor or property of the estate, the automatic stay continues in place to protect the funds from creditors including

the Plaintiffs. Similarly, the Debtor's concern regarding Helena National Bank exercising a possible right of setoff against the account funds overlooks the fact that Helena National Bank cannot exercise any right of setoff it may have without first seeking relief from stay to do so. *Citizens Bank of Md. v. Strumpf,* 516 U.S. 16, 18–19, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995).

not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (2012). Stated differently, this Court *must* abstain from hearing the State Court Lawsuit if:

> (1) a timely motion is made; (2) the claim or cause of action is based upon state law; (3) the claim or cause of action is 'related to' a bankruptcy case, but did not 'arise in' or 'arise under' the bankruptcy case; (4) such action could not have been commenced in federal court absent § 1334 jurisdiction; (5) such action is commenced in state court; and (6) such action can be timely adjudicated in state court.

■ *In re Grubbs Constr. Co.*, 305 B.R. at 481 (quoting *Frelin*, 292 B.R. at 381 (citing *Nat'l Union Fire Ins. Co. v. Titan Energy, Inc. (In re Titan Energy, Inc.)*, 837 F.2d 325, 333 n. 14 (8th Cir.1988))); *see also In re Schmidt*, 453 B.R. at 350. The moving party has the burden of proving that abstention is required under section 1334(c)(2). *Frelin*, 292 B.R. at 381 (citing *All Am. Laundry Serv. v. Ascher (In re Ascher)*, 128 B.R. 639, 644 (Bankr.N.D.Ill. 1991)).

■ The Plaintiffs argue that all the elements of section 1334(c)(2) are met and this Court must abstain from hearing the claims against the nondebtor defendants. (Br. in Supp. of Mot. at 1–2, Doc. No. 7). The Debtor does not dispute that the second, fourth, and fifth elements for mandatory abstention are met. This Court agrees that the second, fourth, and fifth elements for mandatory abstention are met in that Counts II and III are based upon state law, the claims could not have been commenced in federal court absent

jurisdiction under section 1334, and the claims were commenced in state court. The Debtor argues, however, that that mandatory abstention is not warranted because the first, third, and sixth elements are not met. First, the Debtor argues the Motion was untimely as it was brought more than thirty days after the Notice of Removal was filed. (Resp. at 2, 8). Second, the Debtor argues the State Court Action is "so inextricably intertwined with the claims against the Debtor" that it is a core proceeding. (Resp. at 8). Finally, the Debtor argues that the Plaintiffs have not demonstrated that the State Court Action can be timely adjudicated in state court. (Resp. at 8). Each of the three disputed elements will be discussed separately below.

### 1. *Timeliness of Motion*

■ As to the first element, that a timely motion be made, the Court disagrees with the Debtor that the Motion was untimely filed. Section 1334(c)(2) does not define "timely." Courts typically review timeliness of abstention motions on a case-by-case basis. *Joremi Enters., Inc. v. Hershkowitz (In re New 118th LLC)*, 396 B.R. 885, 893 (Bankr.S.D.N.Y.2008) (citing *Channel Bell Assocs. v. W.R. Grace & Co.*, No. 91 Civ. 5485(PKL), 1992 WL 232085, at *5 (S.D.N.Y. Aug. 31, 1992)). The Debtor argues that the Motion is untimely because it was filed more than thirty days after the State Court Action was removed to this Court. No such time limitation is found in section 1334(c)(2).

To the extent the Debtor argues there is a thirty day requirement because the Motion also sought remand, the Court finds the argument is misplaced. There are two methods for removal to bankruptcy courts: (1) removal pursuant to the general removal statutes found at 28 U.S.C. §§ 1441 to 1451; and (2) removal pursuant to the

more specific statute referencing removal to bankruptcy court found at 28 U.S.C. § 1452. *Cargill, Inc. v. Man Fin., Inc. (In re Refco, Inc.),* 354 B.R. 515, 519 (8th Cir. BAP 2006). The general removal statutes, in section 1447, provide that most motions to remand "must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c) (2012). The Debtor, however, did not remove the State Court Action under the general removal statutes, but rather removed the State Court Action to this Court pursuant to Rule 9027 of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. § 1452. (Notice of Removal at 3, AP Doc. No. 1).

In contrast to the general removal statutes, "[n]either § 1452 nor Rule 9027 contains any time limitation for the filing of a motion to remand." *In re Refco, Inc.,* 354 B.R. at 519. Rather, under section 1452, the Court may "remand such claim or cause of action on any equitable ground" and the motion for remand will be treated as a contested matter. 28 U.S.C. § 1452(b); Fed. R. Bankr. P. 9027(d). The more generous standard of section 1452 provides bankruptcy courts "with a much broader range of discretion in deciding whether to remand than under the technical and procedural requirements prescribed in [section] 1447(c)." *Tex. Gulf Trawling Co. v. RCA Trawlers & Supply, Inc. (In re Ciclon Negro, Inc.),* 260 B.R. 832, 835 (Bankr.S.D.Tex.2001). Several courts have found there is no deadline for filing a motion to remand under 28 U.S.C. § 1452(b). *See Refco, Inc.,* 354 B.R. at 519–20 (remand motion filed thirty-three days after removal was timely; thirty-day time limit of section 1447 does not apply to matters removed under section 1452); *In re New 118th LLC,* 396 B.R. at 893–94 (remand motion filed more than eight months after removal was timely under the circumstances); *In re Ciclon Negro, Inc.,* 260 B.R. at 837 (finding the thirty-day time limitation of section 1447 inapplicable to matters removed under section 1452(b)).

Here, the Motion seeking abstention and remand was filed on January 7, 2015, thirty-five days after the State Court Action was removed to this Court. The Court finds the action taken by Plaintiffs in seeking remand was reasonable and timely under the circumstances. Thirty-five days is not a long period of time, and the Court is mindful that the period of time also included multiple intervening holidays. Moreover, to the extent the Debtor argues the Motion should have been filed within thirty days pursuant to 28 U.S.C. § 1447, the Court finds that the case was removed pursuant to Rule 9027 of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. § 1452, and not pursuant to 28 U.S.C. § 1447. Rule 9027 of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. § 1452 do not contain a thirty day time requirement. Accordingly, the Court finds that the Motion was timely filed and the first element for mandatory abstention is met.

### 2. *"Related To" Jurisdiction*

The Debtor next argues the third element for mandatory abstention, that the claim or cause of action is "related to" a bankruptcy case, but did not "arise in" or "arise under" the bankruptcy case, is not met. The Debtor argues Counts II and III are not merely "related to" the Debtor's bankruptcy case, but are core matters that "arise under" the Bankruptcy Code or "arise in" the Debtor's bankruptcy case. For the reasons stated in Part II, above, however, the Court disagrees. Counts II and III are merely "related to" the Debtor's bankruptcy case and are noncore matters. Therefore, the third element for mandatory abstention is met.

### 3. *Timely Adjudication in State Court*

Finally, the Debtor argues the sixth element for mandatory abstention is not met because the Plaintiffs did not demonstrate that the claims can be timely adjudicated in state court. The Plaintiffs argued in their Motion and accompanying brief that the claims can be timely adjudicated by the Arkansas County Circuit Court. Neither party made arguments or introduced any evidence regarding this issue at the hearing, but rather only addressed this element in their respective briefs.

In evaluating timely adjudication under section 1334(c)(2), courts have taken varying approaches. Some courts have held that the moving party must present more than unsubstantiated assertions regarding the sixth element. *Nationwide Roofing & Sheet Metal, Inc. v. Cincinnati Ins. Co. (In re Nationwide Roofing & Sheet Metal, Inc.)*, 130 B.R. 768, 779 (Bankr.S.D.Ohio 1991); *see also Allied Mech. & Plumbing Corp. v. Dynamic Hostels Hous. Dev. Fund Co.*, 62 B.R. 873, 878 (Bankr. S.D.N.Y.1986) ("A naked assertion that the matter can be timely adjudicated in the state court, without more is insufficient to satisfy this requirement."); *Meredith v. Clayton Homes, Inc.*, No. 06–CV–4117, 2007 WL 1140407, at *4 (W.D.Ark.2007) (stating that a "party requesting abstention must present evidence demonstrating that the state court action can be timely adjudicated").

Other courts determining timely adjudication "focus on the status and needs of the bankruptcy case rather than any particular time guideline." *In re New 118th LLC*, 396 B.R. at 894 (citing *Vornado Realty Trust v. Stop & Shop Supermarket Cos. (In re Bradlees, Inc.)*, Nos. 04 Civ. 5500(HB), 03 Civ. 2466(HB), 2005 WL 106794, at *8 (S.D.N.Y. Jan. 19, 2005); *Marine Midland Bank v. Zurich Ins. Co. (In re Olympia & York Maiden Lane Co.)*,

Nos. 98 B 46167 JLG, 98 B 46168 JLP, 98/9155A, 1999 WL 58581, at *8 (Bankr. S.D.N.Y. Jan. 25, 1999)). Where the administration of the bankruptcy case will not be impaired by the parties proceeding in state court, some courts have found that the sixth element for mandatory abstention is met. *See Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 779 (10th Cir. BAP 1997); *E.S. Bankest, LLC v. United Beverage Fla., LLC (In re United Container LLC)*, 284 B.R. 162, 174–76 (Bankr.S.D.Fla.2002).

Moreover, in determining timely adjudication where the debtor is in a Chapter 7 case, some courts give less weight to this element altogether. As stated by one court:

> In deciding whether a matter may be timely adjudicated, perhaps the single most important factor is the nature of the underlying chapter proceeding. In a Chapter 7 proceeding, the primary concern of the court is the orderly accumulation and distribution of the assets of the estate. There is no administrative urgency or plan of reorganization to facilitate. In an adversary proceeding related to a Chapter 7 proceeding, timely adjudication can be weighed relatively lightly. By contrast, where a Chapter 11 reorganization is pending, the court must be sensitive to the needs of the debtor attempting to reorganize.

*World Solar Corp. v. Steinbaum (In re World Solar Corp.)*, 81 B.R. 603, 612 (Bankr.S.D.Cal.1988).

In addition to the above approaches to determine timely adjudication, the Second Circuit has developed its own approach, which combines many of the approaches mentioned above. Under the Second Circuit's analysis, courts are to consider the following four factors in evaluating whether the proceeding can be timely adjudicated in state court: "(1) the backlog of the

state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate." *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 671 F.3d 261, 266 (2d Cir.2012) (quoting *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.* 639 F.3d 572, 580 (2d Cir.2011)). Under the Second Circuit's four factor approach, three of the four factors weigh in favor of finding that Counts II and III could be timely adjudicated in state court as discussed further below.

The first factor, the backlog of the state court's calendar relative to the federal court's calendar, is not met because the Court has no evidence to determine what the backlog of the state court's calendar is compared to this Court's calendar. Neither party introduced evidence regarding the state court's docket or the time it will take to adjudicate Counts II and III in state court. From the record, it is clear that the action was pending in state court only a few months prior to removal to this Court, and the state court did not have an opportunity to render decisions on pending motions. Due to the lack of evidence, however, this factor weighs against a finding that Counts II and III could be timely adjudicated in state court.

In contrast, the second, third, and fourth factors of the Second Circuit's test weigh in favor of finding that Counts II and III could be timely adjudicated in state court. The second factor, the complexity of the issues presented and the respective expertise of each forum, weighs in the Plaintiffs' favor. Counts II and III involve state law issues and the state court is the better forum in which to adjudicate such issues.

The third factor, the status of the bankruptcy proceeding to which the state law claims are related, likewise weighs in favor of the Plaintiffs. The Debtor's underlying bankruptcy case has been converted to a case under the provisions of Chapter 7 of the Bankruptcy Code. Rather than reorganization, the primary focus of this Chapter 7 case is the gathering and distribution of assets, and whether the Plaintiffs' claims can be timely adjudicated in state court is of less significance in a Chapter 7 case than it would be if the Debtor were attempting to reorganize in another chapter. Finally, the fourth factor, whether the state court proceeding would prolong the administration or liquidation of the estate, also supports the Plaintiffs' position. The underlying bankruptcy case is a large and complex case. It will take time to liquidate and distribute assets of the Debtor's estate. The Plaintiffs have represented they will proceed against the Debtor through the bankruptcy claims process, and accordingly, the Plaintiffs' pursuit of nondebtor defendants on Counts II and III will not prolong the administration or liquidation of the estate. For these reasons, three of the four factors used in the Second Circuit's test weigh in favor of a finding that Counts II and III can be timely adjudicated in state court. This, however, does not end the Court's analysis.

 The Court agrees with the line of cases holding that the party requesting abstention must present evidence that each element for mandatory abstention is met and "naked assertion[s]" that the matter can be timely adjudicated are insufficient. *Allied Mech. & Plumbing Corp.*, 62 B.R. at 878; *see also In re Nationwide Roofing & Sheet Metal, Inc.*, 130 B.R. at 779; *Meredith*, 2007 WL 1140407, at *4. As stated above, neither party presented evidence or argued at the hearing whether

Counts II and III could be timely adjudicated in state court, but rather only asserted their respective positions in their pleadings.

Because the Plaintiffs bore the burden of proof and made only the bare assertion that the sixth element was met in their pleading, the Court finds the Plaintiffs failed to meet their burden. Accordingly, the sixth element for mandatory abstention has not been met and the Court is not required to abstain from hearing Counts II and III pursuant to 28 U.S.C. § 1334(c)(2). Nevertheless, for the reasons that follow, the Court finds that it should abstain under the permissive abstention provisions of section 1334(c)(1) and that Counts II and III should be remanded to the Circuit Court of Arkansas County, Arkansas.

## B. Permissive Abstention and Remand

Section 1334(c)(1) of title 28 of the United States Code governs permissive abstention. It provides: "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1) (2012). In determining whether permissive abstention is appropriate, courts examine the following factors:

(1) the effect or lack thereof on the efficient administration of the estate if the court recommends abstention;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficult or unsettled nature of the applicable law;

(4) the presence of a related proceeding commenced in state court or other nonbankruptcy court;

(5) the jurisdictional basis, if any, other than [s]ection 1334 of title 28 of the United States Code;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than the form of an asserted "core" proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden on the bankruptcy court's docket;

(10) the likelihood that the commencement of the proceeding involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial; and

(12) the presence of nondebtor parties in the proceeding.

*Frelin*, 292 B.R. at 383 (quoting *Williams v. Citifinancial Mortg. Co. (In re Williams)*, 256 B.R. 885, 894 (8th Cir. BAP 2001)). In addition, where most of the factors for mandatory abstention are met, "bankruptcy courts should give careful consideration whether it would be appropriate to exercise their discretion to abstain [permissively] under section 1334(c)(1)." *In re Titan Energy, Inc.*, 837 F.2d at 333 n. 14 (quoting *U.I.U. Health & Welfare Fund v. Levit (In re Futura Indus., Inc.)*, 69 B.R. 831, 834 (Bankr. E.D.Pa.1987)).

Section 1452(b) of title 28 of the United States Code governs remand. It provides: "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b) (2012). In evaluating whether equitable remand is proper under section 1452(b), the Court uses nearly the same

analysis used to determine whether permissive abstention is appropriate. *Frelin*, 292 B.R. at 383 (the analysis is "virtually identical"). In addition to the twelve permissive abstention factors, for remand the bankruptcy court also considers: "(1) whether remand serves principles of judicial economy; (2) whether there is prejudice to unremoved parties; (3) whether remand lessens the possibilities of inconsistent results; and (4) whether the court where the action originated has greater expertise." *Id.* at 383–84.

 The Court finds that taken together, the factors weigh in favor of abstention and remand. Specifically, the Court finds that because the Plaintiffs have represented that they will proceed against the Debtor though the bankruptcy claims process, abstention will not affect the efficient administration of the bankruptcy estate, and as pointed out by the Plaintiffs, may aid administration if their claims are paid by nondebtor defendants. In addition, the Court finds that state law issues clearly predominate over bankruptcy issues as Counts II and III are based solely on state law in that they arise under the Arkansas Deceptive Trade Practices Act and the Uniform Commercial Code as adopted in Arkansas. Counts II and III are noncore matters. Furthermore, while the applicable law is not difficult or unsettled, the state court has greater expertise in these areas and is the better forum to adjudicate state law issues. Moreover, there is no jurisdictional basis for a federal court to hear Counts II and III other than section 1334(b), which weighs in favor of abstention and remand. Also, Counts II and III are not closely related to the Debtor's bankruptcy case, but rather involve state law claims against nondebtor defendants, which also weighs in favor of abstention and remand.

This Court acknowledges the existence of several other lawsuits removed from various state courts to this Court in connection with the Debtor's bankruptcy case, and the existence of the Turnover Action. This factor weighs against abstention and remand, as hearing all of the removed matters in one forum would serve the principles of judicial economy and lessen the possibilities of inconsistent results. Nevertheless, all of the factors taken as a whole weigh in favor of abstention and remand in this case, and allowing the Plaintiffs to proceed against the nondebtor defendants in state court while proceeding against the Debtor only through the bankruptcy claims process serves the principle of judicial economy. In addition, while Counts II and III have been severed, and the Court will abstain from hearing and remand those Counts to the state court, the Court is mindful that the automatic stay will continue in effect as to the Debtor, property of the Debtor, and property of the estate, unless and until relief from stay is granted. The Plaintiffs have represented to the Court they will not pursue the Debtor, property of the Debtor, or property of the estate in state court in pursuing Counts II and III, and indeed they are prohibited by the automatic stay from doing so. For all of these reasons, the Court finds that permissive abstention is appropriate under section 1334(c)(1) as is remand under section 1452(b).

## V. CONCLUSION

For the foregoing reasons, the Court concludes that Counts II and III should be severed from Count I, the Court should abstain from hearing Counts II and III, and should remand Counts II and III to the Circuit Court of Arkansas County, Arkansas. Accordingly, it is hereby

**ORDERED** that the Plaintiffs' Motion for Determination of Abstention and in the

Alternative to Remand the Removal of the State Court Case is **GRANTED**. For the foregoing reasons, the Court shall sever Counts II and III from Count I, abstain from hearing Counts II and III, and remand Counts II and III to the Circuit Court of Arkansas County, Arkansas.

**IT IS SO ORDERED.**